579 P.2d 1120

**Thomas J. LOCKHART and Rosemary L. Lockhart, Individually and as husband and wife, Appellants,**

v.

**ALLSTATE INSURANCE COMPANY, Appellee.**

**No. 2 CA–CIV 2697.**

Court of Appeals of Arizona, Division 2.

March 30, 1978.

Rehearing Denied May 2, 1978.

Review Denied June 8, 1978.

Aboud & Aboud by Michael J. Aboud, Tucson, for appellants.

Slutes, Browning, Zlaket & Sakrison, P. C., by A. John Pelander and Thomas A. Zlaket, Tucson, for appellee.

## OPINION

HATHAWAY, Judge.

The subject of this appeal is a summary judgment in favor of Allstate as to its duty to defend appellants in a tort action and coverage of its homeowners' insurance policy issued to appellants.

Section II of the Allstate policy provides in pertinent part:

"COVERAGE X—Family Liability

Allstate agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence. Allstate shall have the right and duty, at its own expense, to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, but may make such investigation and settlement of any claim or suit as it deems expedient . . . ."

On the same page of the policy, we find a provision as to "EXCLUSIONS". It sets forth the following exclusion from the family liability coverage:

"to bodily injury or property damage which is either expected or intended from the standpoint of the Insured."

Allstate's position, on motion for summary judgment, was that the bodily injury which was the subject of the pending tort action was within the "expected or intended from the standpoint of the Insured" exclusion of its policy.

In July 1974, Mr. Lockhart and Norman C. Owes, both armed with guns, were involved in a shooting altercation with each other. Multiple shots were fired by both and as a result, Owes was injured. He filed suit for damages against appellants for the injuries arising out of the shooting incident and Allstate defended appellants under a reservation of rights (Pima County Superior Court Cause No. 152628). The jury returned a verdict against appellants in the sum of $878 and Owes moved for an additur or in the alternative for a new trial on the issue of damages only.

Appended to Allstate's motion for summary judgment were a copy of (1) the insurance policy, (2) a recorded statement given by Lockhart to an Allstate investigator, (3) a reservation of rights letter mailed to the Lockharts, and (4) a minute entry ordering a new trial in the tort action.

According to Lockhart's recorded statement, Owes fired the first shot from a distance of ten to fifteen feet. Lockhart had entered the house where the shooting occurred armed with a gun he had taken from his car because, ". . . I just kind of felt funny—something might happen when I went in . . . maybe it was nothing but drinking, but I just didn't want to take anymore chance." Owes fired five shots but only two were "aimed shots" whereas Lockhart fired seven shots. He stated:

"My shots, you know, were there, you know just at him—in fact, (inaudible) I fired 7 shots, I tried to hit his arm— where his arm was, and after then I just tried to stop him."

Also, when asked whether he intentionally tried to hit Owes, Lockhart responded:

"Yeh, I tried to hit his arm, yes tried to hit him—stop him from shooting."

The minute entry order granting the new trial reflects that a key question was whether Lockhart acted in self-defense. The court, in declining to grant an additur or a new trial on the sole issue of damages, indicated that the jury had considered the issues of liability and damages together and let the issue of liability influence its decision on the question of damages. It therefore ordered a new trial on all issues except the issues of negligence and contributory negligence as to which the court had previously directed a verdict.

Allstate argued from the foregoing that even if Lockhart was acting in self-defense at the time of the incident, the policy provided no coverage. In *Vanguard Insurance Company v. Cantrell*, 18 Ariz.App. 486, 503 P.2d 962 (1972), we held that an "intentional injury" exclusion clause, such as we have here, does not relieve the insurer from liability merely because its insured intentionally fired a pistol. (According to the insured, he had not intended to harm the injured person but merely fired the pistol in order to frighten him.) On the other hand, in *Clark v. Allstate Insurance Company*, 22 Ariz.App. 601, 602, 529 P.2d 1195, 1196 (1975), we sustained a summary judgment in favor of the insurer, holding that the "intentional injury" exclusion clause was applicable because the act of striking another in the face ". . . is one which we recognize as an act so certain to cause a particular kind of harm that we can say a person who performed the act intended the resulting harm, and his statement to the contrary does nothing to refute that rule of law."

■ We agree with Allstate that the possible legal justification of self-defense does not save an otherwise intentional act from the "intentional injury" exclusion. *Home Insurance Company v. Neilsen*, 332 N.E.2d 240 (Ind.App.1975). See, *Hartford Accident and Indemnity Company v. Krekeler*, 363 F.Supp. 354 (E.D.Mo.E.D.1973), rev'd on other grounds, 491 F.2d 884 (8th Cir. 1974).

■ The insurance policy excludes coverage for an intentional act of the insured which was intended to cause injury or which could be expected to cause injury. The question of self-defense presents an issue of motive or justification for an intentionally caused harm but does nothing to avoid the inference of intent to harm that necessarily follows Lockhart's deliberate shooting at Owes. *Home Insurance Compa-*

*ny v. Neilsen, supra.* Lockhart's own statement demonstrates that he intended to shoot the gun and to cause injury. Whether he intended the precise injuries which occurred is immaterial. We are of the opinion that despite Lockhart's affidavit stating that he fired his gun only to protect himself and to prevent Owes from shooting him, there is no factual issue as to his intent which would preclude granting summary judgment. *Clark v. Allstate Insurance Company, supra.*

Appellants urge that we follow the rationale of *Walters v. American Insurance Company,* 185 Cal.App.2d 776, 8 Cal.Rptr. 665 (1960); *Davidson v. Welch,* 270 Cal. App.2d 220, 75 Cal.Rptr. 676 (1969), and *Gray v. Zurich Insurance Company,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). These cases stand for the proposition that coverage exclusion requires an element of wrongfulness or misconduct. As stated in *Walters v. American Insurance Company, supra:*

> "If plaintiff acted in self-defense then although he 'intended the act,' plaintiff acted by chance and without a preconceived design to inflict injury just as though he were acting intentionally, although negligently, and injured someone." 185 Cal.App.2d at 783, 8 Cal.Rptr. at 670.

The California rationale stems from an interpretation of Section 533 of the Insurance Code which provides:

> "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

The words "wilful act" as used in the statute have been construed to mean something more blameworthy than the type of misconduct involved in ordinary negligence and something more than the mere intentional doing of an act constituting such negligence. *Russ-Field Corporation v. Underwriters at Lloyds, London, England,* 164 Cal.App.2d 83, 330 P.2d 432 (1958). This is of course correct. Thus the driver making a left-hand turn, although he intended to make the turn, is not excluded from coverage if he happens to strike a pedestrian in the crosswalk. However, if he *intended* to strike the pedestrian, the exclusion would apply in California because of his wrongful motive.

We do not agree with the California courts which apply this reasoning to a self-defense situation in the face of the policy language which excludes intentional injury. The distinction made between the intentional striking of the pedestrian and the intentional act of self-defense is that self-defense is not wrongful, thus the policy exclusion does not apply. But this ignores the plain and unambiguous language of the policy which excludes injury intended by the insured, regardless of motive.

■ Since the only claim to be litigated in the new trial falls within the exclusionary provision of its policy, Allstate has no duty to defend. *Paulin v. Fireman's Fund Insurance Company,* 1 Ariz.App. 408, 403 P.2d 555 (1965).

■ Appellants also contend, citing *Parsons v. Continental National American Group,* 113 Ariz. 223, 550 P.2d 94 (1976), that Allstate should be estopped to deny coverage and has waived the intentional act exclusion because it took advantage of the fiduciary relationship between its agent (the attorney who represented Lockhart in the tort action) and its insured. Appellants' reliance on *Parsons* is misplaced. First of all, in its reservation of rights letter to appellants, Allstate advised them that from its investigation, it appeared that the incident arose out of an intentional act and if so, its policy would not provide coverage. The letter also advised them that if they had any questions, either they or their attorney, Mr. Aboud, should call the author of the letter. Thus, it was made clear that the insurer might contest coverage. Secondly, the attorneys retained by Allstate to represent appellants in the tort action were not the same attorneys retained by Allstate to bring this declaratory judgment action. Furthermore, in *Parsons,* the attorney obtained confidential and privileged infor-

**154**

mation from the insured which was later used in garnishment proceedings to the insured's detriment. Here, Allstate's assertion of noncoverage was based on the trial court's elimination of all negligence issues from the case.

Appellants appended to their opposition to the motion for summary judgment a copy of a letter to Allstate from the personal injury trial attorney advising Allstate as to the new trial ruling. In support of their claim that the attorney did not give undivided loyalty to the insured-client, they seize on the following language:

"We had expected the Judge to rule that an additur was appropriate in this matter, however, the order for a new trial on all of the issues of intentional tort and the damages is favorable to us. Obviously, since the only issues before the court now are whether or not Mr. Lockhart's conduct was intentional, the Company must decide whether or not to provide Mr. Lockhart with another defense of this case."

While the words "favorable to us" may be construed in various ways, they do not establish that the attorney was actively working against the Lockharts' interest while representing them. On this state of the record, the trial court properly found no waiver of the intentional act exclusion.

Affirmed.

RICHMOND, C. J., and HOWARD, J., concur.