694 P.2d 259

**FIRE INSURANCE EXCHANGE, a reciprocal or interinsurance exchange, Plaintiff-Appellee,**

v.

**Tom BERRAY and Bonnie Berray, husband and wife, Defendants-Appellants.**

**No. 1 CA–CIV 5834.**

Court of Appeals of Arizona,
Division 1, Department A.

Feb. 15, 1983.

Johnson, Jessen, Dake & Oplinger by James E. Vieh, Phoenix, for plaintiff-appellee.

Cox & Cox by Stephen L. Cox, Phoenix, for defendants-appellants.

OPINION

KLEINSCHMIDT, Judge.

Appellants, Tom and Bonnie Berray, challenge the granting of summary judgment in favor of appellee, Fire Insurance Exchange, by which the trial court found that an exclusion clause of a homeowner's liability insurance policy applied so that there

was no liability coverage for or duty to defend appellants in an action brought for injuries received at the hands of Tom Berray. We reverse.

On the evening of April 9, 1980, appellant Tom Berray and Raul Rodriquez stopped at a vacant gas station in Phoenix to discuss differences that had arisen between them earlier in the evening over bets on a pool game. After exchanging words Rodriquez began beating Berray. Berray was struck a number of times before he was able to pull himself into his van. Berray took a gun from the van and shot Rodriquez after Rodriquez ignored warnings not to come any closer. Rodriquez subsequently filed a civil action against Berray in superior court to recover for injuries suffered as a result of the gunshot.

Fire Insurance Exchange had issued a homeowner's policy to the Berrays which contained an "intentional acts" exclusion worded as follows:

We do not cover direct or indirect loss from:

. . . .

6. The result of intentional acts of an insured.

On June 13, 1980, Fire Insurance Exchange filed a complaint for declaratory judgment in the Maricopa County Superior Court, alleging that its policy provided no coverage for injuries arising from Tom Berray's intentional shooting of Raul Rodriquez and that it had no duty to defend the Berrays in litigation arising from the shooting. Berray, Rodriquez and both of their spouses were named as defendants in the declaratory judgment action. Appellee moved for summary judgment based on the clause excluding intentional acts.

The trial court granted appellee's motion for summary judgment. Appellants argue that the intent referred to in the exclusion is the intent to do bodily harm rather than the mere intent to do a voluntary act. They further argue that there is a disputed question of fact as to whether Berray meant to injure Rodriquez and that summary judgment was therefore inappropriate. The only evidence the trial court considered

was the deposition testimony of Tom Berray. Appellants argue that whenever Tom Berray was asked at the deposition whether he "intended" to shoot, harm, injure, or kill Rodriquez, he always stated that he had no such intention. Such disavowals were, sometimes explicitly and sometimes by implication, contradicted by appellant himself elsewhere in the record.

On appeal from the grant of a motion for summary judgment the facts and reasonable inferences therefrom must be viewed in the light most favorable to the party opposing the motion. *Grain Dealers Mutual Insurance Co. v. James*, 118 Ariz. 116, 575 P.2d 315 (1978); *Washington National Trust Co. v. W.M. Dary Co.*, 116 Ariz. 171, 568 P.2d 1069 (1977). Summary judgment is inappropriate where a genuine issue of material fact is presented or when the slightest doubt as to the facts exists. *City of Phoenix v. Space Data Corp.*, 111 Ariz. 528, 534 P.2d 428 (1975); *Byars v. Arizona Public Service Co.*, 24 Ariz.App. 420, 539 P.2d 534 (1975). Conversely, summary judgment is appropriate where there is no genuine dispute as to any material fact, only one inference can be drawn from the undisputed material facts, and based on the undisputed material facts the moving party is entitled to judgment as a matter of law. *Lundy v. Prescott Valley, Inc.*, 110 Ariz. 362, 519 P.2d 61 (1974); *Dutch Inns of America, Inc. v. Horizon Corp.*, 18 Ariz.App. 116, 500 P.2d 901 (1972).

Despite Berray's statements that he never intended at any time to harm Rodriquez he testified in other portions of his deposition that he reached a point where he felt that his life was in danger and that he felt justified in shooting Rodriquez and even killing him. Berray conceded that he intended to take his gun, intended to point it in the direction where he believed Rodriquez to be, and intended to pull the trigger because he felt his life was in danger. There was no claim that the gun discharged accidentally or that Berray believed it to be unloaded. He admitted that he knew it was loaded and that it dis-

charged because he pulled the trigger. When asked why he shot Rodriquez, Berray stated, "Well, you know, after looking at the whole situation, to defend myself."

We find this issue to be governed by *Clark v. Allstate Ins. Co.,* 22 Ariz.App. 601, 529 P.2d 1195 (1975). In *Clark,* a clause in an insurance policy excluding intentional injury was found to apply in a situation in which one high school student struck another student in the face and injured him. The assailant argued on appeal that the exclusion clause should not apply because although he had intended to strike the other boy he had not meant to hurt him. In holding that the injuries to the boy struck were a result of an intentional act which negated coverage under the insurance policy, the court stated:

> The contention of young Clark that he did not intend to injure Niemi does not make the question of intention an issue of material fact which must go to the trier of fact. Perhaps if Clark maintained that striking Niemi was an accident, and that the blow itself was unintentional, summary judgment would be improper due to the dispute over a material fact. However, the act of striking another in the face is one which we recognize as an act so certain to cause a particular kind of harm that we can say a person who performed the act intended the resulting harm, and his statement to the contrary does nothing to refute that rule of law.

22 Ariz.App. at 602, 529 P.2d at 1196. To the same effect is *Steinmetz v. National American Ins. Co.,* 121 Ariz. 268, 589 P.2d 911 (App.1978).

We find in this case that only one inference can be drawn from Berray's testimony. The action of intentionally aiming a gun, known to be loaded, at a person at close range and intentionally firing it is an act so certain to cause harm that it must be said, as a matter of law, that the person pulling the trigger intended the resulting harm despite his statements to the contrary.

Appellants' reliance on *Vanguard Ins. Co. v. Cantrell,* 18 Ariz.App. 486, 503 P.2d 962 (1972) is misplaced. In *Vanguard* Browning had robbed a drive-in window of a liquor store. He fired a shot with a pistol over his shoulder as he drove away and the shot hit Cantrell who was at the window. The trial court found that Browning had merely shot in the general direction of the injured person, Cantrell, and had not intended to shoot him. The trial court held that the exclusion clause in that situation did not apply. The critical difference between the facts in the *Vanguard* case and the facts in this case are that Browning did not believe his gun was aimed in a manner to strike Cantrell, whereas Berray testified that he intentionally pointed the gun at Rodriquez and pulled the trigger because his life was in danger.

■ Appellants urge, however, that an act committed in self-defense should not be considered an "intentional act" within the meaning of the exclusion. With this we agree.

We have been asked to rule as a matter of law that a person who consciously acts in self-defense in defending himself against a wrongful attack is precluded from calling on his insurance company to defend him because of his "intentional act." A narrow and literal interpretation of the term "intentional acts" would lead to the application of the exclusion in these circumstances. However, on closer analysis, it would appear that Berray is entitled to at least a defense by the insurance company.

The primary purpose for incorporating an "intentional acts" exclusion into an insurance policy is "... to preclude individuals from benefiting financially when they deliberately cause injury." *Globe American Cas. Co. v. Lyons,* 131 Ariz. 337, 339–40, 641 P.2d 251, 253–54 (App.1981). When an insured is responding to an unjustified attack and acting in self-defense, this policy behind the exclusion loses meaning if applied to exclude the duty to defend the insured.

While the act of shooting a person in self-defense is intentional in a narrow

sense, in a broader sense it is not. One confronted with the need to defend himself has had the situation thrust upon him and matters have progressed to a point where action is his only resort. There is a close similarity between such a circumstance and events that we think of as conventional accidents.

Anyone who reads the facts of this case as we have recited them could well conclude that Berray was not really acting in self-defense. For those who read the facts that way, the result we reach may seem unpalatable. We do point out, however, that if the exclusion applies to the claim of self-defense it would apply, not just to people like Berray who may be involved in what may ultimately be determined to be a mutual affray but also to the person who, for example, is attacked without provocation in his own home and who defends himself.

A case which is quite closely in point is *Allstate Ins. Co. v. Novak*, 210 Neb. 184, 313 N.W.2d 636 (1981), where the plaintiff and defendant became involved in an altercation that resulted in the defendant striking the plaintiff in the face. The defendant's insurer moved for summary judgment on the grounds that the injury was the result of an intentional act which was excluded by the terms of the policy, notwithstanding the insured's claim that he had acted in self-defense. The trial court granted the motion and the Supreme Court of Nebraska reversed. In doing so it noted that when one acts in self-defense he is not acting to injure another but to defend himself. The court went on to say that it could not determine whether the insurer would have to pay any judgment entered against its insured until a determination was made as to whether the insured was obligated to pay and upon what basis.

The Nebraska court examined whether the insurer had a duty to defend even though it might have no obligation to pay the judgment entered against its insured and concluded that the duty to defend existed for two reasons. The court said:

> Based upon the evidence presented to us at this juncture, it appears clear that the insured *may have a valid defense* or may only be liable for negligence. *In either event* the action would be covered by the policy, and therefore the carrier has a duty to defend.[1] (Emphasis added.)

313 N.W.2d at 642.

■ Other cases support the idea, at least by implication, that intentional acts of self-defense are not within such policy exclusions. *See Kermans v. Pendleton*, 62 Mich.App. 576, 233 N.W.2d 658 (1975) and *Farmer's Ins. Exch. v. Sipple*, 255 N.W.2d 373 (Minn.1977). We hold that if an insured raises the issue of self-defense to an alleged intentional assault the insurer owes a duty to defend.

■ Our decision is supported by a related rationale. We are well aware that Division Two of this court held in *Lockhart v. Allstate Ins. Co.*, 119 Ariz. 150, 579 P.2d 1120 (App.1978), that intentional acts of self-defense were within the exclusion. As we have already discussed, however, other jurisdictions have reached a different result and in discussing similar exclusions several courts have considered the language ambiguous in relation to a claim of self-defense. *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966); *Brasseaux v. Girouard, supra*. Arizona follows the principle of construction that, where various jurisdictions reach different conclusions as to the meaning, intent, and effect of the language of an insurance contract, a strong indication of ambiguity is established. *Outdoor World v. Continental Cas. Co.*, 122 Ariz. 292, 594 P.2d 546 (App.1979); *Thompson v. Government Employees Ins. Co.*, 122 Ariz. 18, 592 P.2d 1284 (App.1979).

---

1. It is unclear from reading *Novak* how the insured might have been liable for negligence. We assume it would be on the theory discussed in *Brasseaux v. Girouard*, 269 So.2d 590 (La. App.1972) to the effect that one who acts in the genuine but unreasonable belief that self-defense is necessary or one who uses excessive force in self-defense is liable for negligence. Since this issue was not briefed and since it is not essential to our opinion, we do not resolve it.

The court in *Lockhart* did not consider a crucial canon of interpretation regarding whether the "intentional acts" exclusion was ambiguous. The court was satisfied in its own mind as to what "intentional acts" meant to it. However, language used in an insurance policy must be viewed from the standpoint of the layman who is untrained in the law or in the field of insurance. *Hanson's, Inc. v. Great Southwest Fire Ins. Co.*, 118 Ariz. 256, 575 P.2d 1282 (App.1978). The average layman certainly perceives that, if Berray had punched Rodriquez in the nose without provocation, this would be an intentional act which would preclude liability on the part of the insurance company for any judgment. On the other hand, we believe the average layman could conclude, as we have already done, that Berray, in responding in self-defense to an unjustified attack by Rodriquez, was not acting intentionally because he had the situation thrust upon him. This rationale is closely akin to the rule that an insured is entitled to coverage for losses which he reasonably expects will be covered by his policy of insurance and that the burden is on the insurer to show that the person to whom the policy was issued had no reasonable basis for believing coverage existed. *See*, for example, *Gray v. Zurich Ins. Co., supra; Hionis v. Northern Mut. Ins. Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974); and *Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 388 A.2d 1346 (1978).

Where the language in an insurance policy is subject to more than one interpretation, the policy must be construed in favor of the insured and against the insurance company that drafted the policy. *Thompson v. Government Employees Ins. Co.*, 122 Ariz. 18, 22, 592 P.2d 1284, 1288 (App. 1979).

The judgment of the trial court is reversed.

CORCORAN, J., concurs.

OGG, Presiding Judge, dissenting:

I respectfully dissent and find no coverage under this policy that excludes any loss that is "the result of intentional acts of an insured".

The facts, as related by Berray in his deposition, clearly indicate that he intentionally shot Rodriquez. As Rodriquez was striking Berray with his fists, Berray dove over the front seat of his van, took his loaded Magnum pistol out of its holster, rolled back over the seat, pulled back the hammer on the pistol, aimed and fired the gun at Rodriquez. There is no claim that the shooting was not intentional by Berray because of some mental infirmity as in *Globe American Casualty Co. v. Lyons, supra.*

To find coverage under the facts of this case ignores the plain and unambiguous language of the policy which excludes injury intended by the insured, regardless of the motive of the insured.

Division Two of this court in *Lockhart v. Allstate Ins. Co.*, 119 Ariz. 150, 579 P.2d 1120 (App.1978), *rev. denied* June 8, 1978, faced this issue in a strikingly similar fact situation involving a similar policy exclusion and determined that the carrier had no duty to defend. *See Clark v. Allstate Insurance Co., supra.*

I would affirm the decision of the trial court.