218 F.Supp.2d 1123 (2002)
Raydeen Lynn GADDY, et al., Plaintiffs,
v.
HARTFORD LIFE INSURANCE COMPANY, Defendant.
No. 4:01CV786 SNL.
United States District Court, E.D. Missouri, Eastern Division.
September 11, 2002.
*1124 Thomas A. Connelly, St. Louis, MO, for Plaintiffs.
Don M. Downing, Shonagh K. Clements, Stephen P. Palley, Stinson and Morrison, St. Louis, MO, for Defendant.

MEMORANDUM
LIMBAUGH, Senior District Judge.
This matter is before the Court on Defendant Hartford Life Insurance Company's ("Hartford's") Motion for Summary Judgment (# 14) and Plaintiffs' Motion for Summary Judgment (# 15). Plaintiffs originally filed this breach of contract action in the Circuit Court for the City of St. Louis on May 18, 2001. Defendant removed this case to federal court on diversity grounds. Plaintiffs assert that they, as the surviving children of decedent Charles Gaddy, are entitled to death benefits under an accidental death and dismemberment policy issued by Defendant. Defendant contends that Plaintiffs are not entitled to death benefits under said policy because decedent died because he was driving while intoxicated; a non-accidental cause *1125 of death under Missouri law. Defendant further contends that death attributable to driving while intoxicated is specifically excluded under the policy. Responsive pleadings have been filed with respect to both summary judgment motions. This case is set for trial on the Court's jury trial docket of September 30, 2002.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.
The facts in this case are largely undisputed. June 27, 1998 was a clear, dry, sunny day in Pulaski County, Missouri. At 5:35 pm Charles R. Gaddy ("Gaddy") was on his way home from the grocery store, driving his white 1996 Ford Taurus, Southbound, along a curved section of Missouri Highway 28[1]. Gaddy took the curve at 50 miles per hour, and lost control of his vehicle; running off the roadway and onto the soft gravel shoulder. Gaddy then overcorrected his steering, returned to the roadway, and crossed the center line. His car collided with a second vehicle in the Northbound lane. The crash severely damaged both vehicles, and both drivers were pronounced dead at the scene less than one hour after impact.
Given the circumstances of the collision, and pursuant to § 43.250 R.S.Mo., the Missouri Highway Patrol conducted a technical accident investigation with the assistance of the Pulaski County Sheriff's *1126 Department and the Dixon Fire Department. As part of the investigation, blood drawn from decedent Gaddy was tested by the Missouri State Highway Patrol Crime Laboratory, which determined his blood alcohol content to be 0.21%. Defendant's Exhibit D. A report of the investigation was made by Sgt. G.L. Borlinghaus of the Missouri Highway Patrol. Defendant's Exhibit I at HAR-0113. In his report Sgt. Borlinghaus determined that Gaddy's intoxication[2] caused the crash. Defendant's Id. at HAR-0119.
At the time of his death, decedent Gaddy maintained a checking account at State Bank of Dixon, which is now known as Mid-America Bank & Trust Company ("Bank"). Plaintiffs' Exhibits 3 and 4. The Bank provided the names and addresses of its depositors to Hartford Life Insurance Company ("Hartford") which in turn solicited customers to purchase accident and dismemberment insurance under its Accidental Death & Dismemberment Policy No. ADD-5461 ("Policy"). Plaintiffs' Exhibit 2. The Policy offered $2,000.00 of free coverage to any enrolled Bank depositor, and offered additional coverage paid for by premiums deducted from the insured's checking account. Plaintiffs' Exhibit 3. Gaddy completed an enrollment form, selecting an additional $60,000 in coverage. Plaintiffs' Exhibit 3. Premiums for the Policy were deducted from Gaddy's checking account monthly. Plaintiffs' Exhibit 4. The Policy was in effect at the time of Gaddy's death. Defendant's Undisputed Material Facts ¶ 5.
After Gaddy's death, Plaintiffs submitted a claim to Defendant for the proceeds of the Policy. Defendant refused to pay the proceeds of the Policy on the grounds that Gaddy's death did not meet the conditions of the Policy in that it was proximately caused by Gaddy's driving while intoxicated. Defendant argues that this is not an "accidental" cause of death under Missouri law, and that even if it was, an exclusion in the Policy bars coverage in this case. In addition to contesting the Defendant's argument that decedent Gaddy was driving while intoxicated, Plaintiffs have argued at length against the validity of an alleged amendment by rider to the Policy which includes an exclusion for "injury sustained while legally intoxicated from the use of alcohol while operating a motor vehicle." Defendant's Exhibit B.
Before addressing the issues, the Court must first consider certain evidentiary matters. Plaintiffs have argued that "[t]he coroner's report and police report are unauthenticated business records which are being offered as proof of the matter asserted therein and, as a result, are impermissible hearsay and not competent evidence for use for any purpose in these proceedings. FRE 802(6) and 903(11)." Plaintiffs' Memorandum in Opposition to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, p. 5. The Court docket does not show the filing of a "coroner's report" by any party to this lawsuit. The Court assumes that Plaintiffs are attacking the admissibility of Defendant's Exhibits D and I; the Missouri State Highway Patrol's toxicology report and accident investigation report, respectively.
The contents of these reports are admissible hearsay under FRE 803(8)(C) which carves out an exception for hearsay contained *1127 in public records and reports consisting of "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." FRE 803(8)(C). The reports at issue were prepared pursuant to § 43.250 R.S.Mo., and as police accident investigation reports, are admissible under the public records hearsay exception. Foster v. General Motors Corporation, 20 F.3d 838 (8th Cir.1994).
Plaintiffs' objections offer no grounds as to why the documents might not be authentic, and the Court finds Plaintiffs' objection to Defendant's Exhibit D unusual in light of the fact that Plaintiffs produced Defendant's Exhibit D. See McQueeney v. Wilmington Trust Co., 779 F.2d 916, 929 (3d Cir.1985). The reports bear sufficient indicia of authenticity to overcome Plaintiffs' conclusory objections. Accordingly Plaintiffs' objections to Defendant's Exhibits D & I are without merit.
The parties agree that Missouri law governs this case. In Missouri, a putative beneficiary claiming benefits under an accidental death policy must prove that the insured died by accident as a condition precedent to the insurer's duty to pay. State Farm Mut. Auto. Ins. Co. v. Underwood, 377 S.W.2d 459, 462 (Mo.1964) (citing Caldwell v. Travelers' Ins. Co., 305 Mo. 619, 267 S.W. 907, 921 (1924)). Where, as here, the uncontroverted evidence shows that the cause of death is driving while intoxicated, the issue is whether an insured who drives while intoxicated, and subsequently dies in an automobile crash caused by his voluntary intoxication, died by "accident".
The parties have not cited any Missouri case law addressing the issue of whether an insured's death proximately attributable to the insured's driving while intoxicated constitutes an "accidental" cause of death. The Court's own independent research likewise has been unsuccessful in locating any case in which this issue has been addressed by a Missouri court or a federal court applying Missouri law. Where there is no state supreme court case on point, a federal court sitting in diversity has the duty to predict how the state's highest court would resolve the claim. ANR Western Coal Development Co. v. Basin Elec. Power Co-op., 276 F.3d 957, 964 (8th Cir.2002); Lincoln Benefit Life Co. v. Edwards, 243 F.3d 457, 465 (8th Cir.2001). This Court must therefore determine whether the Missouri Supreme Court would hold an insured's death proximately caused by driving while voluntarily intoxicated to be an "accident" for the purposes of an accidental death and dismemberment insurance policy.
Missouri courts have long held that although an injury may be unusual or unexpected, it is not the result of an accident if the "means causing the injury has been employed by the insured in the usual and expected way." Applebury v. John Hancock Mut. Life Ins. Co., 379 S.W.2d 867, 870 (Mo.App.1964) (insured's death proximately caused by excessive speed while fleeing police not accidental) (citing Caldwell v. Travelers' Ins. Co., 305 Mo. 619, 267 S.W. 907, 921 (1924) (insured's death from surgical operation not an accidental death)). It is "well settled under Missouri law that death from bodily injury is accidental only if it is unforeseeable and unexpected." Cappo v. Allstate Life Ins. Co., 809 S.W.2d 131, 134 (Mo.App. W.D.1991) (death a reasonably foreseeable consequence of meeting with known murderers). Piva v. General Am. Life Ins. Co., 647 S.W.2d 866, 875 (Mo.App. W.D.1983); see also Stogsdill v. General Am. Life Ins. Co., 541 S.W.2d 696, 699 (Mo.App.1976); Murphy v. Western & Southern Life Ins. Co., 262 S.W.2d 340, 342-43 (Mo.App.1953) (intentional *1128 consumption of medication resulting in unintentional overdose is not `accidental' cause of death).
Thus, where the insured's death results, even unexpectedly, from an affirmative choice by the insured to expose himself to a known peril which reasonable and ordinary prudence would deem dangerous, recovery will be denied. Applebury, 379 S.W.2d at 871. The standard is an objective one, not what the insured himself understood or believed, "but what a reasonable person ordinarily would expect by such conduct." Herbst v. J.C. Penney Ins. Co., 679 S.W.2d 381, 383 (Mo.App.1984). Analytically, Missouri courts trace the chain of causation back to the last intentional act of the insured. If the resulting bodily injury was a probable and natural consequence of that intentional act, the resulting injury was not an "accident", and recovery is properly denied. Cappo supra; Herbst supra; Stogsdill supra; Applebury supra; Murphy supra.
In the instant case, decedent Gaddy voluntarily decided to operate his motor vehicle on a public roadway while intoxicated. A reasonable person of ordinary prudence is presumed to know that driving while intoxicated presents a serious risk of death or serious bodily harm. "[A] death that occurs as a result of driving while intoxicated, although perhaps unintentional, is not an `accident' because that result is reasonably foreseeable." Cozzie v. Metropolitan Life Ins. Co., 140 F.3d 1104, 1110 (7th Cir.1998). "All drivers know, or should know, the dire consequences of drunk driving. Thus, the fatal result ... should surprise no reasonable person." Nelson v. Sun Life Assur. Co. of Canada, 962 F.Supp. 1010, 1012 (W.D.Mich.1997).
This position is in accord with the majority of federal courts. See e.g. Baker v. Provident Life & Acc. Ins. Co., 171 F.3d 939 (4th Cir.1999); Walker v. Metropolitan Life Ins. Co., 24 F.Supp.2d 775, 782 (E.D.Mich.1997); Schultz v. Metropolitan Life Ins. Co., 994 F.Supp. 1419, 1422 (M.D.Fla.1997); Miller v. Auto-Alliance Int'l, Inc., 953 F.Supp. 172, 176 (E.D.Mich. 1997); but see American Family Life Assurance Co. v. Bilyeu, 921 F.2d 87, 89 (6th Cir.1990).
If decedent Gaddy had survived the crash, he could have been charged with driving with excessive alcohol content under § 577.012 R.S.Mo., and with involuntary manslaughter under § 565.024.1(2) R.S.Mo... Drivers in Missouri have an obligation not to drive while intoxicated. State v. Clarkston, 963 S.W.2d 705, 714 (Mo.App. W.D.1998). A state legislature's designation of an act as a felony suggests that the consequences are foreseeable. See Weisenhorn v. Transamerica Occidental Life Insurance Company, 769 F.Supp. 302, 306 (D.Minn.1991) ("being killed while committing felonious drunk driving is a foreseeable risk."); Applebury, 379 S.W.2d at 874 (violation of the law indicative of voluntary and wanton exposure to danger). The knowledge that the Missouri Legislature has deemed driving while intoxicated and causing injury to be a felonious, intentional act, further persuades this Court to opine that Missouri courts would not view an insured's death proximately caused by voluntarily driving while intoxicated to be an "accidental" death.
This Court finds that decedent Gaddy's death was the probable, natural and foreseeable result of his intentional act of driving while intoxicated, and therefore not an "accident" under Missouri law. It is this Court's considered opinion that the Missouri courts would hold that an insured's death proximately caused by driving while intoxicated would not constitute an "accident" for purposes of an accidental *1129 death and dismemberment policy, such as the one at issue in the instant case.
Having found that decedent Gaddy's death, attributable to driving while intoxicated, cannot be considered an "accident" under Missouri law, the Court finds no reason to address the issue of the validity of the alleged amendment by rider to the Policy excluding coverage for injury or death attributable to the insured's driving while intoxicated.
Since a condition precedent to coverage under the subject accidental death policy cannot be shown to exist as a matter of law, Defendant is entitled to summary judgment.
NOTES
[1] The circumstances of the crash are drawn from Defendant's Exhibit I, the Missouri Highway Patrol's Technical Accident Investigation Report. Defendant's Exhibit I is the only evidence before the Court discussing the circumstances of the crash.
[2] The Missouri Statute, in effect at the time of the accident, defined an intoxicated driver as a person who operates a motor vehicle in this state with ten-hundredths of one percent or more by weight of alcohol in such person's blood. § 577.012.1 R.S.Mo. (prior to 2001 amendment). Decedent Gaddy's blood alcohol content was over twice the legal limit at the time of the collision.