RENDERED:  NOVEMBER 8, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0163-MR

FAYSAL HASSAN AND AAA
MILLING CENTER, LLC D/B/A
FUTURE MOTOR SALES, LLC                                    APPELLANTS


                          APPEAL FROM JEFFERSON CIRCUIT COURT
v.                        HONORABLE MITCHELL PERRY, JUDGE
                          ACTION NO. 22-CI-004153


FIRST FINANCIAL INSURANCE
COMPANY                                                            APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CETRULO, AND A. JONES, JUDGES.

CETRULO, JUDGE:  This is an appeal of a summary judgment in favor of First

Financial Insurance Company ("First Financial").  The Jefferson Circuit Court

found that a general liability policy issued to Appellants Faysal Hassan ("Hassan")

and AAA Milling Center, LLC d/b/a Future Motor Sales, LLC ("Future Motor

Sales") did not afford coverage for the owner of the business who shot and killed an intruder.

## FACTUAL BACKGROUND

On August 12, 2021, James Ludwig and Bobby Thornton were stealing catalytic converters from motor vehicles located on the property of Future Motor Sales. Hassan was the owner of Future Motor Sales and had security cameras on the lot which sent images to his cell phone. Seeing that an unknown car had entered his lot, he called the police and then drove to a nearby property to await their arrival. When two more phone calls did not result in a police response, Hassan drove onto the lot in his vehicle to block the thieves' car until the police arrived. Hassan carried a weapon with him and saw Ludwick come out from under a customer's vehicle. Hassan instructed Ludwick to stop, but Ludwick hid behind a dumpster and a stack of used tires. Thornton, who was holding a power saw used to cut the catalytic converters, then approached Hassan. Hassan saw Thornton approach and fired a shot toward the area of the used tires, killing Ludwick. Thornton then physically attacked Hassan, wrestling with him and attempting to enter his vehicle. At this point, the police arrived.

Hassan was interviewed and repeatedly told the police he only fired the shot to warn Ludwick and Thornton, and he was merely protecting his

property. He did not intend to hurt anyone, although he admitted he fired into the direction of the stack of used tires.

Hassan was charged with second-degree manslaughter and second-degree reckless homicide. On May 16, 2023, a jury found Hassan guilty of the latter charge, finding he mistakenly believed that physical force was necessary, and he failed to perceive a substantial risk that he was mistaken in that belief "constituting a gross deviation from the standard of care that a reasonable person would have observed in the same situation." (Instruction No. 3, Reckless Homicide in the Second Degree from criminal trial.)

Following the criminal proceedings, Ludwick's wife sued Hassan and his business for her husband's wrongful death. Hassan and Future Motor Sales then filed a third party action for declaratory judgment against First Financial. First Financial provided a general liability policy to Hassan and the business that was in effect at the time of these events. That policy did provide for a defense and indemnity for claims arising from an accident. The declaratory judgment action sought coverage under the policy and a ruling that Hassan and the business were entitled to be provided a defense to the wrongful death action. First Financial denied coverage existed as the shooting was not an accident. It further argued the policy specifically excluded coverage for injuries and damages sustained as the

result of an assault and battery or other physical altercations.  Both parties moved the circuit court for summary judgment.

On January 18, 2024, the Jefferson Circuit Court ruled in favor of First Financial, finding the shot fired by Hassan was not an "accident" for insurance purposes, and the policy expressly excluded Hassan's actions from coverage under the exclusions in an endorsement relating to assault and battery and physical altercations.  This appeal followed.

### STANDARD OF REVIEW

On appeal, Hassan and Future Motor Sales argue that:  1) the shooting of Ludwick was accidental because Hassan did not intend to shoot him; and 2) the exclusion for assault and battery is ambiguous and therefore unenforceable.  First Financial argues the policy itself is not applicable because the underlying incident does not qualify as an accident.  Secondarily, the insurer claims the damages are excluded by an endorsement and exclusion for assault, battery, or other physical altercations.

The determination of whether the claims are covered involves interpretation of the insurance contract, which is a matter of law we review *de novo*.  *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co*., 306 S.W.3d 69, 73 (Ky. 2010).  Also, "when we review a trial court's decision to grant summary judgment, as in this case, we must determine whether the trial court correctly found that there

were no genuine issues of material fact[.]" *Id.* Since there do not appear to be any genuine issues of material fact in this case, summary judgment was appropriate. Despite Hassan's attempt at distinguishing precedent, we have clear caselaw to guide us.

## ANALYSIS

In *Kentucky Farm Bureau Mutual Insurance Company v. Coyle*, we addressed very similar facts. 285 S.W.3d 299 (Ky. App. 2008). In *Coyle*, the defendant ("Coyle") shot a man who was harassing and stalking his wife. *Id.* at 301. Coyle was an "insured" party under his wife's homeowner's policy, but that policy excluded coverage for bodily injury "expected or intended" by an insured. *Id.* at 302. Coyle argued the injuries were not intended, but accidental. *Id.* at 301. Despite a summary judgment motion by the insurer, the trial court allowed the matter to proceed to a jury. *Id.* at 302. The jury found the shooting was an accident and only negligent, not intentional. *Id.* at 301.

On appeal, we reversed the trial court and held that as a matter of law, summary judgment should have been granted in favor of the insurer. *Id.* at 303. Our Court acknowledged the general rule that coverage can be provided if an injury was not actually and subjectively intended or expected by an insured. *Id.* at 304. However, we found the doctrine of inferred intent was applicable and acted as an exception to that rule. *Id.* In discussing the exception, we relied on

precedent, *Willis v. Hamilton Mutual Insurance Company*, 614 S.W.2d 251 (Ky. App. 1981).

In *Willis*, a jury found a defendant, "Smothers," civilly liable for an assault and battery. *Id*. at 252. Smothers's insurer denied liability for his acts on the basis that he expected or intended them. *Id*. On appeal, we adopted the majority rule which allows for intent to be inferred by the nature of the act and the accompanying reasonable foreseeability of harm. *Id.* We then upheld summary judgment in favor of the insurer. *Id*.

Since that early case, our appellate courts have consistently upheld summary judgments in wrongful death actions and assault actions such as this, even where the insured denied any intent to cause injury or death. *See Nationwide Mut. Fire Ins. Co v. Pelgen*, 241 S.W.3d 814 (Ky. App. 2007) (applying the inferred intent doctrine to deny coverage to a mentally ill insured who shot his wife); *see also Stone v. Kentucky Farm Bureau Mut. Ins. Co*., 34 S.W.3d 809 (Ky. App. 2000) (finding that despite being medicated and depressed, it was reasonable for the court to conclude that the insured knew the "nature and quality of his actions" when he pointed a rifle at another and pulled the trigger); *see also Walker v. Econ. Preferred Ins. Co*., 909 S.W.2d 343 (Ky. App. 1995) (applying the principles of the inferred intent doctrine to a man who intended to hit someone, but did not intend the severe damage that resulted); *see also Sigler v. Ralph*, 417

S.W.2d 239 (Ky. 1967) (finding that even absent intent to harm, use of a firearm was enough to justify inferring intent); *see also Coyle*, 285 S.W.3d at 306 (finding inferred intent where the insured admitted he intentionally and deliberately discharged a bullet at the victim).

As the trial court noted, our precedent requires that the court decide whether the *event or action* giving rise to the alleged damages was intended and not whether the resulting injury or damage was intended. *Martin/Elias Props., LLC v. Acuity*, 544 S.W.3d 639, 643-44 (Ky. 2018). Further, as we held in *Pelgen*, *supra*, "[t]he inferred intent rule is supported by sound public policy principles, in part because it removes from the trial court the burden of determining an actor's thought process[es]." 241 S.W.3d at 817.

Here, Hassan stated he did not intend to injure or kill the intruders, but only intended to scare them away. However, he did not assert the gun discharged accidentally or because of something outside of his control. He admits he intentionally fired the weapon and, as such, his actions cannot be properly described as an "accident." Certain acts are so likely to result in some injury that intent "can be inferred as a matter of law." *See Thompson v. West American Ins. Co.*, 839 S.W.2d 579, 581 (Ky. App. 1992). We believe Hassan firing a gun is such an act. This is a permissible inference because of the nature and

circumstances of the particular situation.[1]  *See James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273 (Ky. 1991).

Hassan primarily argues his express denial of any intent to harm anyone should be sufficient to reverse the summary judgment herein.  In support of that position, he relies upon out-of-state cases where an insured was protecting himself or property.  However, we do not need to turn to other jurisdictions when our precedent is clear.  As the Supreme Court has held and the circuit court noted in its opinion and order:

> in determining whether an event constitutes an *accident* so as to afford the insured [commercial general liability] policy coverage, courts must analyze this issue according to the doctrine of fortuity:  1) whether the insured intended the event to occur; and 2) whether the event was a "'chance event' beyond the control of the insured."

*Martin/Elias*, 544 S.W.3d at 643 (quoting *Cincinnati*, 306 S.W.3d at 76).

Further, the cases relied upon by Hassan dealt with accidental discharge of a weapon, and there was no such contention here.  The circuit court did not err in finding Hassan intended to fire his weapon and the "event" was not an accident covered under this policy.

---

[1] Hassan also points out that no depositions had been taken of any witness at the time of the trial court's summary judgment ruling.  However, the case had been pending for well over a year before both parties moved for summary judgment.  Moreover, the record did include the policy, written discovery, the video recording of the attempted theft and shooting, Hassan's recorded statement to the police, as well as the entire record of the criminal case against Hassan.  Although it is not specifically argued that summary judgment was premature, we also do not find it to have been prematurely granted.

Hassan also argues, on appeal, that the instruction to the jury and the conviction in his criminal case directly contradicts this trial court's ruling. In the criminal action, the jury found Hassan "failed to perceive the threat of injury to others." This, he argues, indicates that he had no intent, but was merely reckless in failing to perceive the risks associated with firing his weapon. Hassan provides no authority for this assertion, but this Court has held that a final "criminal conviction can be used for purposes of collateral estoppel in a later civil action." *See Roberts v. Wilcox*, 805 S.W.2d 152, 153 (Ky. App. 1991) (citation omitted).

However, we disagree that his conviction for reckless behavior – failure to perceive the substantial risk – indicates absence of intent so as to qualify the event as an accident under the policy. For one, Hassan argues that his actions cannot be characterized as an assault because he did not intend for the bullet to strike Ludwick. However, Hassan admits that he intended the gunshot to serve as warning of bodily harm, and that conduct satisfies the *prima facia* elements of the intentional tort of assault. *See Brewer v. Hillard*, 15 S.W.3d 1, 8 (Ky. App. 1999) ("Battery is a tort which requires an unwanted touching of the victim. Assault requires the threat of touching."). Ludwick's death resulted from Hassan's intentional assault, and, therefore, Hassan's actions fell within the purview of the policy's coverage exclusion.

The contract in this case provided for coverage for bodily injury caused by an accident. In determining whether an event constitutes an accident for insurance purposes, our Courts have held this issue must be analyzed according to the doctrine of fortuity. *Cincinnati*, 306 S.W.3d at 74. As explained, that doctrine focuses on the event and not on the actor's subjective intent.

Secondly, Hassan's actions are excluded from coverage regardless by language contained in the endorsement. The endorsement excluded any coverage for injury or damage:

1. Expected or intended from the standpoint of any insured;

2. Arising in whole or in part out of any "assault" or "battery" committed or attempted by any person;

3. Arising in whole or in part out of any act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened "assault" or "battery"; or

4. Arising in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed or act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened verbal or physical confrontation or altercation.

Hassan argues the exclusion contained within this later issued endorsement was ambiguous and should be disregarded. The endorsement excludes coverage for bodily injuries, expected or intended, or arising from any

assault, battery, or other physical altercation. We note that if the shooting does not fall within the general liability coverage, we do not need to assess the applicability of the exclusion. *Jones v. Acuity*, 658 S.W.3d 492, 497 (Ky. App. 2022). However, since the circuit court also found Hassan's actions fell within the exclusion to coverage, we will address this claimed error. Assuming *arguendo* there was coverage under the policy, which we did not find, the endorsement would have also excluded any coverage.

Hassan argues the endorsement language is confusing and capable of inconsistent interpretations since it replaced the prior policy language that excluded coverage for any bodily injury expected or intended by the insured. Here, he primarily relies on the doctrine of reasonable expectations and asks this Court to interpret ambiguous terms in favor of coverage for the insured. *See generally True v. Raines*, 99 S.W.3d 439 (Ky. 2003). However, Hassan offers nothing other than his own interpretation that the endorsement is ambiguous. Only actual ambiguities will trigger application of the doctrine of reasonable expectations, and we discern no ambiguity in the endorsement herein. *See id.* at 443 (citing *St. Paul Fire & Marine Ins. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226 (Ky. 1994)). Contracts must be "construed according to the entirety of [their] terms and conditions" and as modified by any endorsements. *Id.* at 443 n.10 (citation omitted). "Where the terms of an insurance policy are clear

-11-

and unambiguous, the policy will be enforced as written." *Reynolds v. Travelers Indem. Co. of Am.*, 233 S.W.3d 197, 201 (Ky. App. 2007) (citation omitted).

The plain language of the endorsement herein states it replaces paragraph A.2, Section II of the policy. "An endorsement is later in time than the original policy; and it should prevail over any conflicting provisions of the policy." *Kemper Nat. Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 875 (Ky 2002) (internal quotation marks and citation omitted). The endorsement clearly says the assault and battery exclusion from coverage applies to all acts "expected or intended" and all theories of liability asserted against any insured, including all theories of negligence, recklessness, or intentional tort if the precipitating event was an assault or battery or physical altercation. As the circuit court noted, "any one of these would be sufficient grounds upon which to deny coverage. Taken together, they remove all doubt."

Based upon our own review, we agree with the circuit court that summary judgment was proper in favor of First Financial. The judgment is therefore AFFIRMED.

ALL CONCUR.

-12-

BRIEFS FOR APPELLANTS:     BRIEF FOR APPELLEE:

Grover S. Cox                      Katherine L. Kennedy
Louisville, Kentucky              Cincinnati, Ohio